NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

CRAIG SCHMELL,

    Plaintiff,

v.

MORGAN STANLEY & CO., INC.,

    Defendant.

Civ. No. 17-13080

**OPINION**

THOMPSON, U.S.D.J.

## INTRODUCTION

This matter comes before the Court upon the Motion to Compel Arbitration and Stay Proceedings Pending Arbitration by Defendant Morgan Stanley Smith Barney LLC ("Defendant"). (ECF No. 7.) Plaintiff Craig Schmell ("Plaintiff") opposes. (ECF No. 8.) The Court has decided this matter based on the written submissions of the parties without oral argument pursuant to Local Civil Rule 78.1(b). For the following reasons, Defendant's Motion is denied.

## BACKGROUND

This case arises out of Defendant's termination of Plaintiff's employment. Plaintiff was employed as a Senior Vice President at Defendant's office in Red Bank, New Jersey. (Compl. ¶¶ 6–7, Ex. A, ECF No. 1-1.) While employed, Plaintiff was writing a self-help book that referenced his history with drug and alcohol abuse and ultimate recovery. (*Id.* ¶¶ 8, 11.)

1

Plaintiff presented a draft of the book to his employers in June 2017, who allegedly responded with threats to his employment based on this past drug and alcohol abuse and requested edits be made prior to publication, in exchange for Plaintiff's continued employment. (*Id.* ¶¶ 12–16.) Despite making the changes, Plaintiff claims he received subsequent threats to his employment. (*Id.* ¶¶ 18–22.) Plaintiff was terminated on October 31, 2017, which he alleges to be discrimination based on his status as a recovered addict. (*Id.* ¶¶ 23–24, 31.)

On November 13, 2017, Plaintiff filed the instant lawsuit in the New Jersey Superior Court, Law Division, Monmouth County, pleading one Count: violations of the New Jersey Law Against Discrimination ("LAD"). (*See generally* Compl.) Defendant timely removed (ECF No. 1) and then moved to compel arbitration and stay proceedings on January 4, 2018 (ECF No. 7). Plaintiff opposed (ECF No. 8), Defendant replied (ECF No. 9), and Plaintiff filed an additional sur-reply (ECF No. 12).[1] This Motion is presently before the Court.

## LEGAL STANDARD

Where there is a contract between the parties that provides for arbitration, there is "an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLC v. Cocchi*, 565 U.S. 18, 21 (2011) (per curiam) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.*, 473 U.S. 614, 631 (1985) (internal quotation marks omitted); *see* Federal Arbitration Act, 9 U.S.C. § 2. "Any doubt concerning the scope of arbitrability should be resolved in favor of arbitration." *Mitsubishi Motors Corp.*, 473 U.S. at 626 (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983)); *see also Gray Holdco, Inc. v. Cassady*, 654 F.3d 444, 451 (3d Cir. 2011). When a party refuses to submit to arbitration pursuant to a valid

---

[1] Pursuant to the Local Rules, a moving party is prohibited from filing a sur-reply without leave of the Court. L. Civ. R. 7.1(d)(6). However, in its discretion, the Court will consider the arguments presented in Defendant's sur-reply, as cited below.

2

contract provision, the party seeking to arbitrate may petition the court for an order compelling arbitration. 9 U.S.C. § 4.

For this presumption in favor of arbitration to apply, there must be a valid contract between the parties. The Court must find that "(1) there is an agreement to arbitrate and (2) the dispute at issue falls within the scope of that agreement." *Century Indem. Co. v. Certain Underwriters at Lloyd's, London*, 584 F.3d 513, 523 (3d Cir. 2009). "[S]tate law contract principles apply in determining whether the parties to an action have agreed to arbitrate." *Ricci v. Sears Holding Corp.*, 2015 WL 333312, at *2 (D.N.J. Jan. 23, 2015) (citing *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995)). When deciding a motion to compel arbitration, courts employ the standard for summary judgment pursuant to Federal Rule of Civil Procedure 56(c). *Uddin v. Sears, Roebuck & Co.*, 2014 WL 130292, at *4 (D.N.J. Mar. 31, 2014). Therefore, the Court must "first determine whether there is a genuine issue of material fact as to whether a valid arbitration agreement exists." *Jayasundera v. Macy's Logistics & Ops., Dep't of Human Res.*, 2015 WL 4623508, at *2 (D.N.J. Aug. 3, 2015).

## DISCUSSION

Defendant moves the Court to compel arbitration because Plaintiff's lawsuit falls within its mandatory CARE Program ("Convenient Access to Resolutions for Employees") and corresponding Arbitration Agreement. Plaintiff claims that he cannot be bound to arbitrate pursuant to "an Arbitration Agreement that Plaintiff never saw, never reviewed, and never agreed to solely based on the fact that notice of the Agreement was emailed to Plaintiff's work email address once." (Pl.'s Opp'n at 1, ECF No. 8.) In response, Defendant argues that Plaintiff received notice of the agreement, but failed to opt-out. (Def.'s Reply 3–4, 10, ECF No. 11.)

3

I.   **New Jersey Law on Arbitration Provisions**

In this action involving a New Jersey citizen employed in one of Defendant's New Jersey offices, New Jersey contract law governs whether Plaintiff is bound to arbitrate. Applying general principles of contract law, arbitration agreements "must be the product of mutual assent," such that "parties have an understanding of the terms to which they have agreed." *Id.* at 312–13 (internal quotations and citations omitted). They must be "entered into knowingly and voluntarily" after receiving notice. *Descafano v. BJ's Wholesale Club, Inc.*, 2016 WL 1718677, at *2 (D.N.J. Apr. 28, 2016).

Accordingly, "an arbitration provision cannot be enforced against an employee who does not sign or otherwise explicitly indicate his or her agreement to it." *Leodori v. CIGNA Corp.*, 814 A.2d 1098, 1106 (N.J. 2003). This need not be an actual signature, but must demonstrate a willingness and intent to be bound by the arbitration provision, *Ricci*, 2015 WL 333312, at *4, such as failing to opt out, *Descafano*, 2016 WL 1718677, at *2. The Court should be satisfied that a plaintiff "actually intended to waive his statutory rights." *Uddin*, 2014 WL 130292, at *5 (quoting *Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A.*, 773 A.2d 665, 673 (N.J. 2001)); *see also Garfinkel*, 773 A.2d at 673 (requiring agreements "clearly and unmistakably" establish waiver).

II.  **Analysis**

Plaintiff received notice of the Arbitration Agreement Defendant seeks to enforce via an email to all employees informing them of changes to the CARE program and linking the new CARE Guidebook and Arbitration Agreement. (Krentzman Decl. ¶ 4.) Plaintiff received this email from Defendant's Human Resources Department email account at his work email address at 4:30 PM on September 2, 2015. (*Id.* ¶ 5; Ex. B, ECF No. 7-5.) The email, entitled

"Expansion of CARE Arbitration Program," informed employees that the program was mandatory unless they opted out and that their continued employment without opting out constituted acceptance of the Arbitration Agreement. (Krenztman Decl. ¶¶ 6–7.) The new CARE Guidebook and Arbitration Agreement were also available since May 2015 on "me@MS," Defendant's internal portal and library for all human resources files. (*Id.* ¶ 4.) Employees had thirty (30) days, until October 2, 2015, to comply (*id.* ¶ 7; Ex. B at 1–2), and during that period, Defendant posted and maintained arbitration and opt-out notices on the me@MS portal. (*Id.* ¶ 15.)

Defendant cites a number of cases involving electronic systems for the argument that the failure to opt-out gives rise to a binding arbitration agreement. (Def.'s Mot. Compel at 9, ECF No. 7.) This conclusion, however, is inapposite to the case law. These cases involve more than passive acquiescence, whereby a "[p]laintiff's review and acceptance of the Agreement [was] clearly recorded and dated" in the defendants' electronic systems. *Ricci*, 2015 WL 333312, at *4 (noting that "the PeopleSoft system reflects he entered into the Agreement by clicking 'Yes' and 'Submit.'"). In each cited case, the employee was required to move through a series of forms or webpages and ultimately completed some acknowledgment referencing arbitration or alternative dispute resolution requirements. *See, e.g.*, *Descafano*, 2016 WL 1718677, at *3 (finding plaintiff bound to arbitrate where he signed an acknowledgement of receipt that referred to the defendant's dispute resolution program); *Jayasundera*, 2015 WL 4623508, at *4 ("Plaintiff accepted the terms of the arbitration agreement by electronically signing the SIS Acknowledgement Form and failing to return the 'opt-out Election Form' within 30 days."); *Uddin*, 2014 WL 1310292, at *3 (describing number of webpages with links, attention-grabbing font, and a series of policy acknowledgments that employees had to complete).

In further support of this argument, Defendant relies on *Jaworski v. Ernst & Young, LLP*, 119 A.3d 939 (N.J. Super. Ct. App. Div. 2015), *cert. denied* 125 A.3d 392 (Table) (N.J. 2015), for the proposition that Plaintiff's continued employment following email notice of the arbitration policy change constitutes assent to the policy. (Def.'s Reply at 4.) It is true that under New Jersey law "where an arbitration agreement states an employee accepts its terms by continued employment, the agreement will bind an employee who continues employment beyond the agreement's effective date." *Nascimento v. Anheuser-Busch Cos., LLC*, 2016 WL 4472955, at *5 (D.N.J. Aug. 24, 2016); *see also Martindale*, 800 A.2d 872, 879 (N.J. 2002); *Dugan v. Best Buy Co. Inc.*, 2017 WL 3442807, at *4 (N.J. Super. Ct. App. Div. Aug. 11, 2017) (finding continued employment may constitute acceptance depending on longevity; three weeks of continued employment was insufficient to bind the plaintiff).

Given the opt-out procedure here, it appears that Plaintiff's continued employment without opt-out constitutes assent. Like in *Jaworski*, the body of the email included basic information regarding the new CARE provisions, 119 A.3d at 943, informing employees that "the CARE Arbitration Program will be mandatory for all employees in the U.S., and all covered claims between the Firm and employees will be resolved through final and binding arbitration on a non-class, non-collective and non-representative action basis as more fully described in the Arbitration Agreement and CARE Guidebook." (Ex. B at 1.) Without following the outlined opt-out procedure, Plaintiff remained employed for two years following this email and the policy change.

Unlike the cases on which Defendant relies, here there is an underlying dispute as to whether Plaintiff had notice of the agreement. (Pl.'s Letter Sur-Reply at 2, ECF No. 12.) Plaintiff presents certified statements that he has no recollection of receiving, viewing, or

6

opening the September 2, 2015 email or accessing the me@MS site (Schmell Decl. ¶¶ 4–6, ECF No. 8-1), and Defendant presents documentary evidence of its email system with a record of the September 2, 2015 email that was delivered to Plaintiff (Ex. B; Krentzman Suppl. Decl. ¶ 4, ECF No. 11-2). *But see Jaworski*, 119 A.3d at 946 n.3 ("[P]laintiffs do not challenge the adequacy of the email notice of changes to the Program . . . ."); *Ricci*, 2015 WL 333312, at *4 ("Plaintiff has provided no declaration or other sworn statement in support of his argument that he had no knowledge of the Agreement . . . ."). Defendant also provides exhibits of email correspondence on Plaintiff's account September 2–3, 2015 for the argument that he was working, accessing email, and that therefore notice was adequate. (Def.'s Reply at 7; Ex. 2, ECF No. 11-3.)[2]

Plaintiff's certification presents a genuine dispute of material fact as to whether he was on notice of the agreement to arbitrate such that there was a meeting of the minds and he could mutually assent to the terms of the CARE program.[3] And without adequate notice, there is a genuine dispute of material fact as to whether the alleged assent through continued employment

---

[2] Defendant cites case law, including one case involving this Defendant and the same company-wide CARE email, to argue that evidence of an email sent and received constitutes valid notice. (*See* Def.'s Reply at 5 ("As these courts have recognized, by demonstrating that an email providing an arbitration agreement was sent to the employee under normal business procedures, the employer establishes a rebuttable presumption of receipt.").) The court in *Grant v. Morgan Stanley Smith Barney LLC*, 2017 WL 1044484, at * (S.D. Fl. Mar. 20, 2017), found that the September 2, 2015 CARE email gave rise to a binding arbitration agreement—where the plaintiff acknowledged *seeing* but not *reading* the email. *Id.* at *3. This is an argument already rejected by courts in New Jersey and this Circuit. *See Noble v. Samsung Elecs. Am., Inc.*, 682 F. App'x 113, 116 (3d Cir. 2017); *Hoover v. Sears Holding Corp.*, 2017 WL 2577572, at *3 (D.N.J. June 14, 2017). Although *Grant* is certainly persuasive and the other cases make valid points with respect to the presumption of delivery with email notice, Plaintiff's certification renders this case factually distinct.

[3] It is true that under the Rule 56 summary judgment employed for this Motion, "self-serving affidavits are insufficient." *Kirleis v. Dickie, McCamey & Chilcote, P.C.*, 560 F.3d 156, 161 (3d Cir. 2009). Such declarations may sufficiently raise a genuine dispute of material fact in the context of arbitration where the declarations specifically claimed that the plaintiff was never provided a copy of the agreement, never signed an agreement, and thus never agreed to arbitrate. *See id.* at 161.

without opt-out was knowing and voluntary. *See Descafano*, 2016 WL 1718677, at *2. Therefore, the Court cannot find that Plaintiff is bound to arbitrate pursuant to this agreement. Having found that the email notification and Plaintiff's continued employment cannot constitute notice and assent to the CARE Arbitration Program under the facts as presented, the Court need not consider whether this dispute falls within the scope of the Arbitration Agreement.

## CONCLUSION

For the reasons stated above, the Court denies Defendant's Motion to Compel Arbitration. An accompanying Order will follow.

Date: 3/1/18

ANNE E. THOMPSON, U.S.D.J.